Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1944 | **DATE** | 9/2/2004 |
| **CASE TITLE** | David Karwo vs. Citimortgage Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: CitiMortgage's motion to dismiss is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 3 - 2004 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | 20 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID KARWO,

    Plaintiff,

v.

CITIMORTGAGE, INC., and GENERAL
ELECTRIC MORTGAGE INSURANCE
CORPORATION,

    Defendants.

Case No. 04 C 1944

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff David Karwo (hereinafter, "Karwo") filed suit against Defendants CitiMortgage, Inc. (hereinafter, "CitiMortgage") and General Electric Mortgage Insurance Corp. (hereinafter, "General Electric"), claiming that they violated the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681-1681x (2000). Specifically, Karwo claims that CitiMortgage failed to provide him with the requisite "adverse action notice" when he was charged a premium for mortgage insurance that purportedly was higher than the lowest rate available. The FRCA provides for civil liability for willful and negligent noncompliance. See 15 U.S.C. §§ 1681n-1681o. In addition, Karwo brings suit against General Electric on behalf of a class of persons in the United States with respect to whom General Electric made underwriting decisions for private mortgage insurance within the two-year statute of limitations set forth in the FRCA. See 15 U.S.C.

§ 1681p. Karwo also brings suit against CitiMortgage on behalf of a class of persons to whom CitiMortgage charged private mortgage insurance premiums.

CitiMortgage has moved to dismiss Karwo's claim against it for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. CitiMortgage argues that Karwo fails to state a claim because (1) quoting a premium that is higher than the absolute lowest available premium cannot be an adverse action, and (2) CitiMortgage is not an insurer, and thus does not fall under the purview of the statute. For the following reasons, the Court denies CitiMortgage's motion to dismiss.

## II. FACTUAL BACKGROUND

In 2003, Karwo sought a home mortgage loan from CitiMortgage. On or about December 18, 2003, Karwo received a mortgage commitment letter from CitiMortgage outlining the terms of the loan contract. This letter stated that CitiMortgage required and would obtain private mortgage insurance ("PMI") to protect CitiMortgage in case Karwo defaulted on the loan. On January 15, 2004, CitiMortgage obtained PMI from General Electric and notified Karwo that he would be responsible for the monthly premiums totaling $243.73. Karwo closed the loan on the following day.

The crux of Karwo's complaint is that he (and other similarly situated individuals) did not receive the lowest premium available for PMI as a result of information contained in consumer credit reports. According to Karwo, this higher premium constituted an

adverse action under the FCRA, 15 U.S.C. § 1681m(a), which required Defendants to provide the statutorily-required notice.

## III. DISCUSSION

The FCRA requires that those taking adverse actions based on information contained in a consumer credit report notify the consumer affected of the following: (1) the adverse action taken, (2) contact information for the consumer reporting agency, and (3) consumer rights under the FCRA to obtain a free copy of the credit report and dispute the accuracy or completeness of the information contained in the report. See 15 U.S.C. § 1681m(a).

### A. Definition of "Adverse Action"

Under the FCRA, the term "adverse action" includes "an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance." 15 U.S.C. § 1681a(k)(1)(B)(i). CitiMortgage contends that Karwo's claim fails because setting an initial charge for insurance at a rate greater than the lowest available does not constitute an adverse action under the FCRA. Specifically, CitiMortgage argues that "an increase in any charge for" insurance necessarily requires that there first be an initial premium set and *then* there must be a subsequent increase in premium to constitute an "adverse action" under Section 1681a(k)(1)(B)(i).

CitiMortgage's position finds support in two District Court cases from Oregon, decided by the same judge, holding that the initial setting of insurance premiums at a rate higher than the

standard one is not an adverse action because it entails neither the increase in the premium nor the change in the insurance terms specified in Section 1681a(k)(1)(B)(i). *See Rausch v. Hartford Fin. Servs. Group, Inc.*, 2003 WL 22722061, at *2 (D. Or. 2003); *Mark v. Valley Ins. Co.*, 275 F. Supp. 2d 1307, 1315-17 (D. Or. 2003). The reasoning of these cases is essentially that "an insurer cannot 'increase' a charge for insurance unless the insurer makes an initial demand for payment to the insured and subsequently increases the amount of the demand." *Id.* Furthermore, "an insurer cannot . . . 'unfavorably or adversely change' the terms of insurance unless such terms previously existed and the insurer subsequently alters those terms in an unfavorable manner." *Rausch*, 2003 WL 22722061, at *2; *accord Mark*, 275 F. Supp. 2d at 1315-17. *Rausch* and *Mark*, of course, are not controlling authority here, although there is some persuasive force to the reasoning in these opinions. The Seventh Circuit, however, has not yet addressed the meaning of the term "increase" under these particular facts. As an initial matter, the Court notes that the plain language meaning of "increase," in the context of Section 1681a(k)(1)(B)(i), does not necessarily imply that an "increase" must be solely in comparison to an initial premium paid by the consumer, rather than in comparison to the "normal" or "customary" premium that a similarly-situated consumer - without an adverse credit report - would pay. In other words, can it fairly be said that a consumer who is offered a higher-than-usual initial PMI premium because of his reported credit history has not suffered an

- 4 -

"increase in any charge for" insurance? 15 U.S.C. § 1681a(k)(1)(B)(i). The Sixth Circuit, at least, thinks not; it has referred to a situation where a credit customer is charged more for an automobile than a cash customer as "an increase in . . . price." *Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 327 (6th Cir. 2001). (Although CitiMortgage contends that the meaning of "increase" in *Cornist* does not apply here because *Cornist* did not involve the FCRA, nothing in the FCRA suggests that a different definition of "increase" applies to it.)

In any event, the Court does not need to engage in a full-scale analysis of the meaning of "increase" within the statutory scheme here because there is another provision for "adverse action" that allows Karow's complaint to survive CitiMortgage's motion. *See* Section 1681a(k)(1)(B)(iv). (For this same reason, the Court does not need to address the impact, if any, of the legislative history or the FTC's interpretations of the FCRA for the purpose of resolving this motion to dismiss.)

### 1. *Adverse Action Under Section 1681a(k)(1)(B)(iv)*

Although neither party addressed this provision, Section 1681a(k)(1)(B)(iv) contains a catch-all provision that defines an adverse action as any action or determination that is made in connection with an application that was made by, or a transaction that was initiated by any consumer and is adverse to the interests of such consumer. *See* 15 U.S.C. § 1681a(k)(1)(B)(iv). In *Mark*, however, the Oregon district court held that the catch-all provision

did not apply in the insurance context. *See Mark*, 275 F. Supp. 2d at 1315. The court there reasoned that application of the catch-all provision in the insurance context would create the unreasonable outcome of an insurance-specific provision being effectively swallowed by a general "catch-all" provision. *See id.*

Unfortunately for CitiMortgage, the Seventh Circuit views the "catch-all" provision differently. *See Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 982 (7th Cir. 2004). In *Treadway*, the Seventh Circuit applied the "catch-all" provision to credit transactions, even though such transactions are explicitly - and separately - defined in the Equal Credit Opportunity Act. *See id; see also Payne v. Ken Diepholz Ford Lincoln Mercury, Inc.*, 2004 U.S. Dist. LEXIS 19, at *18 (N.D. Ill. 2004). The same concern that the *Mark* court expressed regarding the "catch-all" provision rendering a specific provision "superflous" was present in *Treadway*, yet the Seventh Circuit did not express concern over this. Indeed, there is nothing in the language of the "catch-all" provision that excludes insurance transactions from its purview. Conceptually, there is no reason why insurance-specific provisions should escape the "catch-all" provision, while credit-specific provisions should not. *See Scharpf v. AIG Marketing, Inc.*, 242 F. Supp. 2d 455, 466,68 (W.D. Ken. 2003)(applying the catch-all definition of adverse action to the initial setting of insurance premiums). Accordingly, the Court concludes that the catch-all provision in § 1681a(k)(1)(B)(iv) applies in the insurance context.

Thus, under the FCRA, the allegations of Karwo's complaint fall under the "catch-all" phrase. Specifically, the outcome that Karwo complains of resulted from an application or transaction initiated by Karwo and caused an outcome purportedly adverse to the interests of Karwo. This is sufficient to survive the minimal requirements of Rule 12(b)(6).

### B. CitiMortgage's Ability to Take Adverse Action

CitiMortgage also argues that, as a matter of law, it could not take adverse action against Karwo under the FCRA because it is not an insurer. The FCRA imposes notice requirements only upon entities "taking adverse actions," but does not contain any provision that explicitly limits adverse actions in the insurance context solely to insurers. 15 U.S.C. § 1681m(a). Some courts have held that the entity contracting with the insured is the only one that can take adverse action under the FCRA, and have rejected FCRA claims against other non-contracting entities involved in the transaction. *See, e.g., Rausch*, 2003 WL 22722061, at *1; *Ashby v. Farmers Group, Inc.*, 261 F. Supp. 2d 1213, 1226 (D. Or. 2003); *Spano v. Safeco Ins. Co. of Am.*, 215 F.R.D. 601, 606 (D. Or. 2003). For instance, the Seventh Circuit indicated that an automobile dealership that merely attempted to arrange credit for a customer with a lender (who ultimately refused to provide credit) did not commit an adverse action. *See Treadway*, 362 F.3d at 983 (citing *Najieb v. William Chrysler-Plymouth*, 2002 U.S. Dist. LEXIS 24927, at *6 n.14 (N.D. Ill. 2002);

see also *Thele v. Sunrise Chevrolet, Inc.*, 2004 U.S. Dist. LEXIS 9670, at *25 (N.D. Ill. 2004).

The mortgage insurance context at issue here is somewhat different than the typical credit or personal insurance transaction in that the consumer does not contract directly with the provider of PMI. Instead, Karwo has direct contractual privity only with CitiMortgage and not General Electric, the provider of PMI. The Court finds no controlling case law directly addressing which parties are capable of taking an adverse action in the mortgage insurance context. Under the facts alleged in the complaint, CitiMortgage plays a significantly greater role in the transaction than an entity that merely arranges an insurance contract between a customer and an insurer. *Cf. Rausch*, 2003 WL 22722061; *Ashby, Inc.*, 261 F. Supp. 2d 1213. Unlike the defendants in Rausch and Ashby, CitiMortgage contracted with the consumer here. Under the theory implied in the complaint, CitiMortgage, not the insurer, directly controls the mortgage insurance fee that the consumer is charged. Karwo also alleges that CitiMortgage required Karwo to pay for mortgage insurance obtained by CitiMortgage as part of his monthly loan payments to CitiMortgage. If General Electric had raised the premium it charged CitiMortgage during the coverage, CitiMortgage, not General Electric, had the option of raising Karwo's monthly payment.

The present situation therefore stands in contrast to those where a seller simply arranges credit for a buyer with a third party lender and does not control the lender's action on the application.

An entity takes an adverse action when the entity does or performs the action. Razilov v. Nationwide Mut. Ins. Co., 242 F. Supp. 2d 977, 988 (D. Or. 2003). Thus, by contracting with Karwo for the cost of mortgage insurance and charging him for an initial insurance premium for PMI that was purportedly higher than the customary charge, CitiMortgage may have taken an adverse action.

As a final matter, the Court again notes the procedural posture of this case: to survive a motion to dismiss Karwo merely needs to have outlined rudimentary facts that would potentially allow CitiMortgage's acts to fall under the FCRA. This Karwo has done.

## IV. CONCLUSION

For the reasons given above, CitiMortgage's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: September 2, 2004