DAVID KARWO,

    Plaintiff,

v.                                    Case No. 04 C 1944

CITIMORTGAGE, INC., and              Hon. Harry D. Leinenweber
GENERAL ELECTRIC MORTGAGE
INSURANCE CORPORATION,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant CitiMortgage's Motion to Reconsider the Court's September 2, 2004 Opinion (the "Motion"). For the following reasons, the Court **GRANTS IN PART** Defendant's Motion, but **DENIES** its Motion to Dismiss.

### I. INTRODUCTION

This case involves a claim under the Fair Credit Reporting Act (the "FRCA"). 15 U.S.C. §§ 1681-1681x (2000). Plaintiff alleges that he applied for private mortgage insurance from CitiMortgage, as required by his mortgage loan. Based on information in his consumer credit report, CitiMortgage charged Plaintiff a higher monthly premium rate than the lowest available rate. Plaintiff rejected the insurance and cancelled the loan the next day. Specifically, Plaintiff claims that CitiMortgage failed to provide him with the requisite statutory "adverse action" notice when his premium was higher than the lowest available rate. Plaintiff also

alleges certain class action claims and brings suit against Defendant General Electric Mortgage Insurance Corp., the underwriting insurer.

In support of its motion to dismiss, CitiMortgage argued that Plaintiff failed to state a claim because (1) quoting a premium that is higher than the lowest available premium cannot be an "adverse action" under § 1681a(k)(B)(i), and (2) CitiMortgage is not an insurer and thus does not fall under the purview of the statute. The Court's opinion denied CitiMortgage's motion to dismiss and noted that the Seventh Circuit had not yet addressed the meaning of "increase," which triggers adverse action notification under § 1681m pursuant to § 1681a(k)(B)(i). The Court declined to engage in a full-scale analysis of that issue and instead based its decision on "adverse action" as defined in § 1681a(k)(B)(iv)'s "catch-all" provision. The Court concluded that analogous Seventh Circuit precedent invited application of the "catch-all" provision to insurance disputes, allowing Plaintiff's claim to survive the 12(b)(6) motion. (See Sep. 2, 2004 Op. at 6); *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 982 (7th Cir. 2004). The Court also held that given the allegations in Plaintiff's complaint, even though CitiMortgage may not be an insurer, CitiMortgage could still take "adverse actions" under the FRCA. (Sep. 2, 2004 Op. at 7-8).

## II. STANDARD OF REVIEW

"Motions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence." *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656 (N.D. Ill. 1976), *aff'd*, 736 F.2d 388 (7th Cir. 1984). A motion to reconsider is appropriate where a court has patently misunderstood a party, made a decision outside the adversarial issues presented, made an error not of reasoning but of apprehension, or there has been a significant change in the law or facts since the court's decision. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191-92 (7th Cir. 1990).

## III. DISCUSSION

CitiMortgage argues that the catch-all provision does not apply here and that Plaintiff fails to state a claim under either § 1681a(k)(B)(i) or (iv). CitiMortgage asks for reconsideration on § 1681a(k)(B)(iv) because neither party addressed the catch-all provision in their briefing on the motion to dismiss. CitiMortgage's arguments regarding the inapplicability of the catch-all provision relies on a lengthy discussion of legislative history concerning an as-yet-effectuated FRCA provision, § 1681m(h)(1), and on a contrary reading of *Treadway*. Further, CitiMortgage reiterates that Plaintiff also fails to state a claim under § 1681a(k)(B)(i).

## A. The "Catch-All" Provision - § 1681a(k)(B)(iv)

### 1. § 1681m(h)(1)'s Applicability

CitiMortgage's extensive reliance on legislative history is somewhat undercut by its own assertion in briefing the motion to dismiss that "this Court need not consider the legislative history of the FRCA because the statutory language is clear and unambiguous." (Def. Mot. to Dismiss Reply Mem. at 7). Further, the 2003 amendment adding § 1681(h)(1), which requires notice for unfavorable terms of risk-based pricing credit applications based on a consumer report, is specifically designated for credit transactions. The plain meaning is clear. Even so, the legislative history that CitiMortgage provides confirms this exclusive application in repeated references to credit transactions and the Equal Credit Opportunity Act (the "ECOA"). For example, the history indicates that under the ECOA definition (*see* § 1681a(k)(A) and §1691(d)(6)), "there is no adverse action notification . . . in certain circumstances" such as "when the consumer is offered less favorable terms, such as a higher interest rate" where the consumer accepts the higher rate, or counteroffer. (*See* Def. Br. at 4, 6); S. Rep. No. 108-166, 2003 WL 22399643, at *20 (Oct. 17, 2003); FTC Statement on the FCRA at 3-4 (July 10, 2003). And that, "[u]nder current law, a consumer is only provided an adverse action notice when the consumer does not qualify for

credit or rejects a counteroffer made by a creditor." S. Rep. No. 108-166, 2003 WL 22399643, at *20.

CitiMortgage acknowledges this fact but argues that it does not matter that the 2003 amendment applies exclusively to the credit context. (Def. Br. at 7). CitiMortgage contends that this provision and its legislative history inform the issue of inapplicability of the catch-all provision to insurance-related transactions because it shows that the FCRA did not cover any risk-based pricing actions prior to the amendment. The Court will not opine as to whether the FCRA also covered certain risk-based pricing credit transactions before the amendment, because the issue here relates to an insurance transaction.

The Court finds that the FCRA's definition of "adverse action" on its face, either under the language of § 1681a(K)(B)(i) or (iv), does not exclude insurance-related transactions such as the application at issue here. Further, considering the 2003 amendment and its legislative history, given the broad definition of adverse action, the fact that the new provision specifically refers to credit transactions under the ECOA definition is some evidence that these insurance transactions were already covered by the language of the FCRA.

Congress also clearly indicated its intent to differentiate between credit and insurance transactions in the plain language of the statute when it provided two separate provisions in the adverse

action definition section. See § 1681a(k). The rules of statutory construction require that a statute be read in context to determine the plain meaning of words or phrases. See *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Here, the plain meaning of the 2003 amendment relates specifically to credit, and does not apply to insurance. This construction is similar to the credit provision, § 1681a(k)(A), which does not apply to insurance transactions, § 1681a(k)(B)(i), and vice versa. Further, the language between the two provisions is different. Section 1681a(k)(A) applies the ECOA "adverse action" definition: "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." See § 1691(d)(6). Section 1681a(k)(B)(i) states: "a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance." Therefore, the statute's plain language indicates that these two sections cover different transactions. Accordingly, the 2003 amendment does not alter the Court's Opinion.

## 2. *Treadway*

CitiMortgage also argues that *Treadway*, 362 F.3d 971, does not support the Court's earlier holding that Plaintiff may have a claim for "adverse action" under the catch-all provision of the FCRA. (*See* Sept. 2, 2004 Op. at 6-7). CitiMortgage contends that *Treadway* merely includes its discussion of the FCRA's broad definition of "adverse action" as a background section to explain the statute and that the Seventh Circuit did not hold that the catch-all provision applied to Treadway's claim. (Def. Br. at 10). CitiMortgage is correct in that *Treadway* did not hold that the plaintiff's credit-based claim fell specifically under the catch-all provision of the FCRA. In fact, the Seventh Circuit affirmed the district court's dismissal of the FCRA claim on the plaintiff's original complaint because the plaintiff failed to allege enough facts to constitute "adverse action." 362 F.3d at 983 (remanding so that the plaintiff could amend her complaint to allege such necessary facts).

Even so, *Treadway* supports an expansive definition of adverse action, which is appropriate under the plain language of the statute and the legislative intent. *See id.* at 982 (citing § 1681a(k) and legislative history). The statute's plain language does not indicate that Congress intended credit transactions or insurance transactions to be evaluated exclusively under the more specific provisions. In certain circumstances, if the facts of a

particular transaction did not fit under one of those sections, it may fall under the purview of the catch-all provision. *See Crane v. Am. Home Mort., Corp.*, No. Civ. A. 03-5784, 2004 WL 1529165, *6-7 (E.D. Pa. July 7, 2004)(noting such with regard to an informal credit application and also pointing to the FCRA's legislative history that indicates an intent to broadly protect consumers by providing notice and that the definition section's list is illustrative and not definitive); *see also Payne v. Ken Diepholz Ford Lincoln Mercury, Inc.*, No. 02 C 1329, 2004 WL 40631, *6 (N.D. Ill. Jan. 6, 2004). *But see Mark v. Valley Ins. Co.*, 275 F. Supp. 2d 1307, 1315 (D. Or. 2003)(holding that the catch-all provision did not apply to insurance transactions because of the insurance-specific provision).

The Court must clarify its Opinion concerning the catch-all provision's applicability to Karwo's § 1681m notice claim. Although the catch-all provision may apply to certain insurance transactions that are not covered under the more specific insurance provision, Karwo's allegations fall within § 1681a(k)(B)(i)'s definition. Therefore, Plaintiff will only survive CitiMortgage's motion to dismiss if his allegations "state a claim upon which relief can be granted." FED. R. CIV. PROC. 12(b)(6). To trigger § 1681m's notice requirement, CitiMortgage must have taken "adverse action" under § 1681a(k)(B)(i).

### B. Karwo's Allegations Under § 1681a(k)(B)(i)

The Court must next address whether Karwo states a claim under the FCRA by taking adverse action pursuant to § 1681a(k)(B)(i). The parties' motion to dismiss briefs focused on § 1681a(k)(B)(i)'s applicability and will be considered here.

The FCRA protects consumer credit by requiring any person who takes adverse action against a consumer based on information in a consumer report to provide the consumer with notice of the adverse action and with certain other information specified in the statute. See § 1681m(a). The adverse action definition section, § 1681a(k), was added in 1996. Because of the recent addition of the definition section, there has not been sufficient opportunity for many courts to address this issue under the insurance provision. See Mark, 275 F. Supp. 2d at 1314 (stating the same). There is no controlling authority on whether the insurance provision includes applications such as the one in this case.

CitiMortgage's main support for dismissal rests with an Oregon district court that has decided several consecutive cases involving the insurance provision. See, e.g., Mark, 275 F. Supp. 2d at 1307; Rausch v. Hartford Fin. Servs. Group, Inc., No. CV 01-1529-BR, 2003 WL 22722061 (D. Or. July 31, 2003). In both cases, the Oregon district court held on summary judgment that a consumer's demand for insurance and a subsequent rate provided by the insurer did not qualify as an adverse action simply because it was higher than the

lowest possible rate available to those with more favorable credit histories. The court looked at the plain meaning of "increase" from § 1681a(k)(B)(i), and found that it meant, "to make something greater or larger." See Mark, 275 F. Supp. 2d at 1316 (citing Merriam-Webster's Colegiate Dictionary 589 (10th ed. 1998)). Based on this definition, the court found that because the insurer did not make an initial "demand" or "charge" for payment to the consumer, there could be no "increase" in the rate to constitute an adverse action. The court concluded that therefore the notice claim was not covered under the FCRA.

Similarly, Karwo's complaint does not allege that when he applied for mortgage insurance, CitiMortgage "previously set and demanded payment of the premium for that insured's insurance coverage at a lower price." See id. Under the Oregon court's restrictive view of "increase," Karwo's claim should be dismissed. However, this is a case of first impression in the Seventh Circuit. The Court does not wholly agree with the Oregon court's statutory interpretation and finds that dismissal is not appropriate here because Karwo's complaint may state a claim for relief under the FCRA pursuant to § 1681a(k)(B)(i).

The Court does not quarrel with Mark's definition of the term "increase." The view, however, that in order to trigger adverse action notification, an insurer must first make a specific demand for payment from the applicant and then, based on the applicant's

credit report, demand payment at a higher rate, is too restrictive. Neither the FCRA's language, nor its legislative history compels this meaning. If Karwo expected a certain rate that similarly-situated customers received based on CitiMortgage's publicly available information at the time of Karwo's insurance application, then there could be an "increase" necessitating notification under the FCRA.

Karwo alleges that "defendants set the private mortgage insurance premium for plaintiff's mortgage loan at $242.73 per month, which premium was not the lowest premium available." (Complaint at 4, ¶ 16). FED. R. CIV. PROC. 8 allows for a liberal notice-pleading standard, and thus the Court must deny CitiMortgage's motion to dismiss to allow for the development of a more complete factual record based on Karwo's allegations. The Court cannot yet determine whether Karwo's claim requires notification under § 1681a(k)(B)(i). The final resolution of the issue is more appropriate for review on a motion for summary judgment.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendant CitiMortgage's Motion, but **DENIES** its motion to dismiss.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: March 21, 2005